**IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | ) | |
| | ) | |
| vs. | ) | CR. NO.  2:07-cr-95 WHA |
| | ) | |
| **TERRANCE DEANDRE CAFFEY** | ) | |

**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS**

Now comes the United States of America, by and through Leura G. Canary, United States Attorney for the Middle District of Alabama, and respectfully submits this response in opposition to Defendant Terrance Deandre Caffey's (hereinafter "Caffey") Motion to Suppress (Doc. 15).  In his Motion, Caffey alleges that the stop and search of a vehicle he was driving was violative of the Fourth Amendment.   He further alleges that all evidence seized and statements obtained subsequent to the stop and search of the vehicle should be suppressed as illegal "fruits" of the vehicle stop and search.

For the reasons set forth below, the United States respectfully submits that the police conducted a lawful stop and search of Caffey's vehicle.  Accordingly, his Motion to Suppress is properly denied.

**Pertinent Facts**

1.  On February 2, 2007, as a result of burglaries in the area, Patrol Officers Aiken and Jacks of the Montgomery Police Department were conducting a still watch at the Storage Depot at 4176 Troy Highway, Montgomery, Alabama.

2. At approximately 6:30 p.m., the officers observed a male, later identified as Caffey, enter the storage complex driving a silver Nissan Altima and park in front of storage unit #1002.

3. Officers observed Caffey enter storage unit #1002 and exit approximately ten minutes later carrying a large black bag under his left arm.

4. Caffey was then observed to enter his vehicle and exit the storage complex at a high rate of speed onto the Troy Highway.

5. As Caffey's vehicle passed by the officers, they pulled behind him. Caffey, still traveling at a high rate of speed, was then observed to move from the far right lane to the far left lane without signaling. As the officers continued behind Caffey's vehicle, he was observed to make a sudden u-turn across the median and merge back into the northbound lane of the Troy Highway.

6. Caffey was then observed moving from the far left lane into the right lane without signaling where he made a sudden right turn into the Olympia Heights Apartment Complex.

7. The officers activated their emergency lights to initiate a traffic stop of Caffey's vehicle. In advance of Caffey pulling his vehicle over, the officers observed him lean down toward the passenger's side of the front seat and make a pushing motion with his right arm.[1]

---

[1] A video and audio commenced running once the lights of the patrol car were activated so Caffey's movement as described by the Officers is also clearly visible on the recording of the stop.

8. With the police in pursuit, Caffey continued for approximately one hundred (100) yards into the apartment complex before he finally stopped his vehicle.

9. As the officers approached Caffey's vehicle, they immediately smelled a strong odor of marijuana coming from the inside of the vehicle. Officer Aiken ordered Caffey out of the vehicle and performed a brief pat down for officers' safety.

10. Officer Aiken then performed a wingspan search of the vehicle for the officers' safety. A large gallon size zip-lock bag containing marijuana[2] was located under the passenger seat (where Caffey had just been observed reaching). Additionally, a large bundle of U.S. currency[3] was observed in plain view on the back seat of the vehicle.

11. Caffey was placed under arrest, read his *Miranda* rights and warnings by Officer Aiken and placed into the patrol car while Officers Jacks and Aikens remained outside talking amongst themselves. While seated alone in the patrol car, Caffey, apparently talking to himself, made incriminating statements. Because the audio and video equipment were still running, these statements were recorded.

12. Caffey was transported to the Special Operations Unit of the Montgomery Police Department. Sergeant Wright again gave Caffey his *Miranda* rights and warnings using a Montgomery Police Department standard rights form. Caffey then stated that the vehicle belonged to his mother and that he drives it "on occasion." He stated that he was aware that officers had located marijuana in the vehicle, but

---

[2] Later tested and determined to be approximately 433 grams of marijuana. This now forms the basis of the allegations in Count 1 of the Indictment.

[3] Later determined to be $8,800.00.

disavowed any knowledge about how it had gotten there. Caffey then advised he did not wish to answer any further questions without an attorney present and all questioning ceased. A search of Caffey's person incident to his arrest revealed a key to the storage unit.

13. Corporal James then sought and received a state search warrant for storage unit #1002. (Appended hereto as Exhibit A). A search of the storage unit, which officers determined was leased by Caffey, revealed approximately ten (10) pounds of marijuana, 185.74 grams of cocaine, and 45.70 grams of cocaine-base (crack-cocaine).[4] Some of the drugs in the storage unit were located in Nike shoe boxes.

14. During his incarceration, Caffey made several phone calls[5] where he made incriminating statements, including telling someone that the police had located most of the drugs. During one call, Caffey told a male to collect the approximately $50,000 that was owed to him.

15. After Caffey posted bail on February 3, 2007, Special Operations Officers began surveillance on 1220 Marlow Drive and 3206 Montwood Drive, both addresses associated with Caffey. On one occasion during the surveillance, Caffey was observed entering the Montwood Drive address carrying a Nike shoe box covered with a black cloth material - appearing very nervous and looking around while holding the box under his arm.

16. On May 7, 2007, at approximately 1120 hours, Caffey was arrested on an

---

[4] Now forms the basis of the allegations in Counts 2, 3 and 4 of the Indictment.

[5] All inmate outgoing calls from the jail are recorded.

outstanding probation warrant from Elmore County.

17. On May 7, 2007, at approximately 1445 hours, officers from the Special Operations Unit executed a document search warrant at 1220 Marlow Drive. During the search of 1220 Marlow Drive, officers located $17,875.00 in U.S. currency and assorted documents inside of the home, and $3,500.00 in U.S. currency inside a Ford Taurus in the driveway. A female present during the search stated that the money did not belong to her. Caffey stated the money did not belong to him either.

18. On May 7, 2007, at approximately 1515 hours, officers from the Special Operations Unit executed a document search warrant at 3206 Montwood Drive. During the search, assorted papers and a quantity of marijuana were seized.

## Discussion

In Whren v. United States, 517 U.S. 806, 810 (1996), the Supreme Court held that when "the police have probable cause to believe that a traffic violation has occurred," a warrantless traffic stop is constitutionally reasonable. In addition, the Eleventh Circuit has held that a police officer may stop a vehicle when there is probable cause to believe the car has violated any number of a multitude of traffic regulations. United States v. Strickland, 902 F.2d 937, 940 (11th Cir. 1990). *See also* Riley v. City of Montgomery, 104 F.3d, 1247, 1252-53 (11th Cir. 1997). Officers Jacks and Aiken lawfully stopped the vehicle Caffey was operating as they had observed Caffey speeding, changing lanes without signaling (on at least two occasions) and turning into the apartment complex without signaling. Accordingly, Officers Aiken and Jacks' traffic stop was based upon sufficient probable cause. Caffey next maintains that the search of the vehicle was the "fruit" of the (unlawful) stop. For the reasons set forth above, the

stop of the vehicle was based upon probable cause to believe that multiple violations of the traffic laws had been committed. Moreover, the Fourth Amendment does not require that police obtain a warrant to search an automobile when they have probable cause to believe it contains contraband or evidence of a crime. United States v. Ross, 456 U.S. 798, 804-09 (1982). When the officers smelled marijuana, probable cause was established that illegal drugs were located inside the vehicle. If police officers have "probable cause to believe that contraband is present, the Fourth Amendment permits the police to search the vehicle without more." Pennsylvania v. Labron, 518 U.S. 938 (1996). The odor of marijuana provides probable cause for an officer to search a place without a warrant. United States v. Garza, 539 F.2d 381, 382 (5th Cir. 1976) (odor of marijuana emanating from defendant's vehicle gave the officer probable cause to search); United States v. Ramos, 443 F.3d 304, 308 (3rd Cir. 2006) (settled that smell of marijuana may establish not merely reasonable suspicion, but probable cause.); United States v. Foster, 376 F.3d 577, 583-584, 588 (6th Cir. 2004); United States v. Humphries, 372 F.3d 653, 658 (4th Cir. 2004) ("We have repeatedly held that the odor of marijuana alone can provide probable cause to believe that marijuana is present in a particular place."); United States v. Laird, 511 F.2d 1039, 1040 (9th Cir. 1975); U.S. v. Zabalza, 346 F.3d 1255 (10th Cir. 2003) (Officer's detection of moderate to strong odor of marijuana coming from vehicle during traffic stop provided probable cause for search of vehicle's trunk). As such, the search and seizure of the marijuana from under the passenger seat was proper. Though not specifically argued by the Defendant, the United States submits that the money located on the rear seat of the vehicle was lawfully seized pursuant to the plain view doctrine. Coolidge v, New Hampshire, 403

U.S. 443 (1971). The police may lawfully seize evidence in plain view when conducting a lawful warrantless search. Texas v. Brown, 460 U.S. 730 (1983)(plain view seizure of balloons containing narcotics valid because police were conducting investigatory detention of automobile).

Caffey maintains that the search conducted at the storage unit was (1) executed before the warrant was signed and (2) that there was no legal justification for issuance of the warrant by the state court judge. Credible evidence will be introduced at hearing to rebut this claim. Evidence will establish that the storage unit was secured until Corporal James was able to seek and obtain the search warrant. It was only then that the warrant was executed by law enforcement on the scene.

Caffey's allegation that there was no justification is also without merit. In rejecting the rigid "two-pronged test" for determining whether an informant's tip established probable cause for the issuance of a warrant as delineated in Aguilar v. Texas, 378 U.S. 108 (1964) and Spinelli v. United States, 393 U.S. 410 (1969), the United States Supreme Court in Illinois v. Gates, 462 U.S. 213 (1983) reasoned:

> The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the 'veracity' and 'basis of knowledge' of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of the reviewing court is simply to ensure that the magistrate had a 'substantial basis' for . . . concluding that probable cause existed.

Id. at 238-39, quoting Jones v. United States, 362 U.S. 257, 271 (1971).

In formulating the "totality of the circumstances" test in Gates, the Supreme Court opined:

> Similarly, we have repeatedly said that after-the-fact scrutiny by courts of

> the sufficiency of an affidavit should not take the form of *de novo* review. **A magistrate's 'determination of probable cause should be paid great deference by reviewing courts**.' 'A grudging or negative attitude by reviewing courts toward warrants,' is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant to a warrant 'courts should not invalidate . . . warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than commonsense manner.'

Id. at 236 (citations omitted)(emphasis added).

It is against this standard that Corporal James' affidavit must be reviewed. In his Motion to Suppress, Caffey claims that there was no legal justification for the issuance of the warrant. This assertion ignores the facts set forth in the affidavit submitted to obtain the search warrant.

As related in his affidavit, Corporal James set forth all the facts surrounding the traffic stop of Caffey including his furtive movement, the strong smell of marijuana, the nervous appearance of Caffey and the subsequent discovery of the marijuana and money. Further, Corporal James set forth the arrest and conviction record of Caffey which consisted of five (5) drug convictions and/or the

Based upon the "totality of the circumstances", the state judge had a "substantial basis for . . . concluding that a search would uncover evidence of wrongdoing, and the Fourth Amendment requires no more." Gates, 462 U.S. at 236. Pursuant to Gates and its progeny, his decision should be afforded "great deference" and should not be lightly overturned. Id. As the Supreme Court noted in Massachusetts v. Upton, 466 U.S. 727 (1984), "it may not be easy to determine when an affidavit demonstrates the existence of probable cause, the resolution of doubtful or marginal cases in this area should be largely determined by the preference to be accorded to warrants." Id. at 734, quoting United States v. Ventresca, 380 U.S. 102, 109 (1965). Thus, Caffey's Motion to

Suppress the evidence seized pursuant to the state search warrant is properly denied **without** the necessity of a hearing.  See Franks v. Delaware, 438 U.S. 154 (1978).

Finally, Caffey argues that his statements and the search of the residences on Montwood and Marlow were the (unlawful) "fruits" of the (unlawful) stop of Caffey's vehicle.  As the stop was lawful and justified as set forth herein, these arguments are properly denied.

## **Conclusion**

Based upon the foregoing, the United States respectfully requests that Defendant Caffey's Motion to Suppress be denied.

Respectfully submitted this the 29th day of June, 2007.

        LEURA G. CANARY
        UNITED STATES ATTORNEY

        /s/Christa D. Deegan
        CHRISTA D. DEEGAN
        One Court Square, Suite 201
        Montgomery, AL 36104
        Phone: (334)223-7280
        Fax: (334)223-7135
        E-mail: christa.d.deegan@usdoj.gov

IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | CR. NO.  2:07-cr-95 WHA |
| | ) | |
| TERRANCE DEANDRE CAFFEY | ) | |

## CERTIFICATE OF SERVICE

I hereby certify that on August 2, 2006, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following: Thomas Goggans, Esquire.

        Respectfully submitted,

        /s/Christa D. Deegan
        CHRISTA D. DEEGAN
        Assistant United States Attorney
        One Court Square, Suite 201
        Montgomery, AL 36104
        Phone: (334)223-7280
        Fax: (334)223-7135
        E-mail: christa.d.deegan@usdoj.gov

# SEARCH WARRANT

| | |
|---|---|
| STATE OF ALABAMA ) | ANYTIME SEARCH WARRANT |
| ) | |
| COUNTY OF MONTGOMERY ) | "KNOCK AND ANNOUNCE" |
| ) | |
| CITY OF MONTGOMERY ) | |

TO ANY SHERIFF, DEPUTY, AND/OR MUNICIPAL OFFICER OR CHIEF OF POLICE:

Proof of affidavits, which are attached hereto and incorporated by reference, having been made this day before me, by <u>Corporal T.D. James #1170, of the Special Operations Division, Narcotics Bureau, with the Montgomery Police Department</u>. You are hereby commanded to make immediate search of:

<u>THE BUISNESS STORAGE DEPOT BIN #1002, LOCATED AT 4176 TROY HIGHWAY MONTGOMERY, ALABAMA,</u>

For the following property <u>Cocaine, Marijuana and any other controlled substances, U.S. Currency, records of drug sales, drug paraphernalia, computers, items described within this affidavit, items listed in Attachment I.</u>

And if you find the same or any part thereof, to bring it forthwith before me, at my office at Municipal Court, Montgomery County, Alabama; or if the said warrant is issued for violation of a State law return the same to any State Court.

Dated this __2nd__ day of __February__, 2007.

                                                    _/s/ Angel R Williams Barnes_
                                    _Magistrate_ JUDGE, MUNICIPAL COURT
                                                CITY OF MONTGOMERY
                                                MONTGOMERY COUNTY
                                                MONTGOMERY, ALABAMA

EXHIBIT "A"

| | | |
|---|---|---|
| STATE OF ALABAMA | ) | AFFIDAVIT IN SUPPORT OF A |
| | ) | |
| COUNTY OF MONTGOMERY | ) | ANYTIME SEARCH WARRANT |
| | ) | |
| CITY OF MONTGOMERY | ) | "KNOCK" |

BEFORE ME, THE HONORABLE _Angela Williams Barnes_, Magistrate ~~JUDGE~~ OF THE MUNICIPAL COURT OF THE CITY OF MONTGOMERY, MONTGOMERY, ALABAMA, THE UNDERSIGNED, CORPORAL T.D. JAMES#1170, PERSONALLY APPEARED AND STATED THAT HE IS A DETECTIVE WITH AND FOR THE SPECIAL OPERATIONS DIVISION, NARCOTICS BUREAU OF THE MONTGOMERY POLICE DEPARTMENT, MONTGOMERY, ALABAMA AND HE HAS REASON TO BELIEVE THAT MARIJUANA, A CONTROLLED SUBSTANCE IS BEING STORED AT THE BUISNESS STORAGE DEPOT BIN #1002, LOCATED AT 4176 TROY HIGHWAY MONTGOMERY, ALABAMA.

THIS IS IN VIOLATION OF THE CODE OF ALABAMA, 1975, SECTION 13A-12-212. THE FACTS TENDING TO ESTABLISH THE FOREGOING GROUNDS FOR ISSUANCE OF AN ANYTIME, "KNOCK AND ANNOUNCE", SEARCH WARRANT ARE AS FOLLOWS:

PROBABLE CAUSE BEING THAT ON FEBRUARY 2, 2007, UNIT 218 (JACKS/ AIKEN) WHILE CONDUCTING SURVEILLANCE AT THE STORGAE DEPOT, DUE TO RECENT BURGLARIES OBSERVED A SILVER NISSAN ALTIMA ENTER THE STORAGE FACILITY AND PARK IN FRONT OF BIN# 1002. A B/M SUBJECT LATER IDENTIFEIED AS TERRANCE CAFFEY EXITED THE VEHICLE AND WENT INTO BIN# 1002. APPROXIMATELY TEN MINUTES LATER CAFFEY EXITED THE BIN CONCEALING AN UNKNOWN OBJECT UNDER HIS ARM. CAFFEY THEN GOT BACK INTO THE VEHICLE AND LEFT THE STORAGE DEPOT. POF. AIKEN AND JACKS ATTEMPTED TO INITIATE TRAFFIC STOP ON CAFFEY'S VEHICLE AFTER HE COMMITED A TRAFFIC VIOLATION. POF. AIKEN OBSERVED CAFFEY LEAN TOWARDS THE PASSNEGER'S SIDE SEAT WITH HIS RIGHT

HAND AND APPEARED TO BE STUFFING SOMETHING UNDER THE SEAT. CAFFEY CONTINUE TO DRIVE FOR APPROXIMATELY 100 YARDS BEFORE HE PULLING OVER. POF. AIKEN UPON APPROACHING THE VEHICLE AND MAKING CONTACT WITH CAFFEY COULD SMELL A STRONG ODOR OF A SUBSTANCE BELIEVED TO BE MARIJUANA EMITTING FROM THE VEHICLE. POF. AIKEN NOTICED THAT CAFFEY APPAERED VERY NERVOUS. CAFFEY WAS ASKED TO EXIT THE VEHICLE FOR OFFICER SAFETY. POF. AIKEN WHILE CONDUCTING A WING SPAN SEARCH OF THE VEHICLE, LOCATED A GALLON SIZE ZIP LOCK BAG CONTAINING A GREEN LEAFY SUBSTANCE UNDER THE PASSENGER'S SEAT. CAFFEY WAS PLACED INTO CUSTODY AND TRANSPORTED TO SPECIAL OPEARTIONS.

FURTHER PROBABLE CAUSE BEING THAT IN DECEMBER, 2006 CAFFEY WAS CONVICTED OF TRAFFICKING IN ILLGAL DRUGS.

ON 1-30-1997, CAFFEY WAS CONVICTED OF UNLAWFUL POSSESSION OF MARIJUANA 2ND.

ON 10-02-1998, CAFFEY WAS ARRESTED FOR TRAFFICKING IN MARIJUANA.

ON 01-05-2004, CAFFEY WAS ARRESTED FOR THE SELL OF MARIJUANA.

ON 07-19-2005, CAFFEY WAS ARRESTED FOR TRAFFICKING IN CANNIBAS.

THE FOREGOING IS BASED ON THE PERSONAL KNOWLEDGE OF THIS AFFIANT, OTHER MEMBERS OF THE NARCOTICS BUREAU AND FACTS OBTAINED BY THE MONTGOMERY POLICE DEPARTMENT NARCOTICS AND INTELLIGENCE BUREAU, MONTGOMERY, ALABAMA, AND IS MADE FOR THE PURPOSE OF SECURING AN ANYTIME, "KNOCK AND ANNOUCE", SEARCH WARRANT FOR THE BUISNESS STORAGE DEPOT BIN #1002, LOCATED AT 4176 TROY HIGHWAY MONTGOMERY, ALABAMA. THE SEARCH WARRANT IS FOR MARIJUANA, AND ANY OTHER CONTROLLED SUBSTANCES, TO INCLUDE: DRUG PARAPHERNALIA, RECORDS OF DRUG TRANSACTIONS, DRUG

BUY MONIES, WEAPONS AND ANY ITEMS LISTED IN ATTACHMENT I: ALSO TO INCLUDE ANY PERSONS LOCATED AT THE RESIDENCE AND ALL COMMON AREAS, OUTBUILDINGS, AND VEHICLES LOCATED WITHIN THE CURTILAGE THERE OF.

SWORN TO AND SUBSCRIBED BEFORE ME THIS ___2ND___ DAY OF __FEBRUARY__, 2007.

CPL. T. D. James #1170
SPECIAL OPERATIONS DIVISION
NARCOTICS AND INTELLIGENCE BUREAU
MONTGOMERY POLICE DEPARTMENT
MONTGOMERY, ALABAMA

MUNICIPAL ~~JUDGE~~ Magistrate
MUNICIPAL COURT
CITY OF MONTGOMERY
MONTGOMERY, ALABAMA
TIME SIGNED: 9:55 p.m.

# **Attachment**

1. Books, records, receipts, notes, ledgers, and other papers relating to the transportation, ordering purchase and distribution of controlled substances.

2. Papers, tickets, notes, schedules, receipts, and other items relating to domestic and international travel.

3. Books, records, receipts, bank statements and records, money drafts, letters of credit, money order and cashier's checks, receipts, pass books, bank checks, safe deposit box keys, and other items evidence of the obtaining, secreting, transfer, concealment and/or the expenditure of money.

4. United States currency, precious metals, jewelry, and financial instruments, including stocks and bonds in amounts indicative of the proceeds of illegal drug trafficking.

5. Photographs, in particular, photographs of co-conspirators, of assets and/or controlled substances.

6. Receipts for items evidencing the expenditure of the proceeds of drug distribution, including, but not limited to, clothing, furniture and electronic equipment.

7. Paraphernalia for packaging, cutting, weighing and distributing controlled substances, including, but not limited to, scales, baggies, spoons, walkie-talkies, CB's, night vision devices, police scanners, binoculars and parabolic microphones.

8. Indicia of occupancy, residency, and/or ownership of the premises, including, but not limited to, utility and telephone bills, keys and cancelled envelopes.

9. Firearms.

# NARCOTICS & INTELLIGENCE BUREAU
## EVIDENCE/PROPERTY INVENTORY

The following item(s) were seized/received by the Montgomery Police Department subsequent to a:   (circle one)
**SEARCH WARRANT, CONSENT SEARCH, or ADMINISTRATIVE INVENTORY**.   These items were inventoried by __CPL. T.D. JAMES #1174__, a member of the Narcotics and Intelligence Bureau.

ADDRESS OBTAINED: __4176 TROY HWY   BIN # 1002__     DATE: __2-2-2007__

TIME OF ENTRY: __2227 HRS__     TIME OF EXIT: __2242 HRS__     PAGE __1__ of __1__

| ITEM# | DESCRIPTION OF ITEM SEIZED OR RECEIVED | LOCATION ITEM FOUND | TIME | OFFICER |
|---|---|---|---|---|
| 1 | (1) ONE BLUE CONTAINER CONTAINING (12) GALLON SIZE BAGS OF MARIJUANA | INSIDE STORAGE BIN | 2227 HRS | DRUMMOND |
| 2 | (1) ONE ZIP LOCK BAG CONTAINING A GREEN LEAFY SUBSTANCE BELIEVED TO BE MARIJUANA | NIKE SHOE BOX, INSIDE STORAGE BIN | 1228 HRS | DRUMMOND |
| 3 | (1) ONE PELOUZE SCALE | INSIDE STORAGE BIN | | |
| | | ROYAL EXPRESS BAG | 1229 HRS | DRUMMOND |
| 4 | BLUE ALPINE CANVASS BAG, CONTAINING A GARBAGE BAG W/ MARIJUANA | INSIDE STORAGE BIN | 1230 HRS | DRUMMOND |
| 5 | EMPTY HEFTY ONE ZIP BOX | INSIDE STORAGE BIN | 1231 HRS | DRUMMOND |
| 6 | NIKE SHOE BOX, CONTAINING A SUBSTANCE BELIEVED TO BE COCAINE INSIDE ZIPLOCK BAG. | NIKE SHOE BOX INSIDE STORAGE BIN | 1232 HRS | DRUMMOND |
| 7 | PAPER DOCUMENTS | BOX INSIDE STORAGE | 1240 HRS | JAMES |
| 8 | SPOON W/ COCAINE RESIDUE ON IT | SHED | 1240 HRS | DRUMMOND |
| 9 | BRINK PAD LOCK | ON BIN DOOR | 1240 HRS | DRUMMOND |
| | NOTHING FOLLOWS | | | |

By signing below I certify that I have received a copy of the inventory of item(s) as identified above.

SIGNATURE OF RECEIVER: __IN CUSTODY__     DATE & TIME: __2-2-07__

I certify that the above inventory accurately reflects the items received or removed from the listed location.

SIGNATURE OF EVIDENCE OFFICER: __CPL. T.D. James #1174__     DATE & TIME: __2-2-07__

